## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **KAREN OVERSTREET,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:25-cv-02735-KHV-BGS |
| v. | ) | |
| | ) | |
| **THE UNIVERSITY OF KANSAS HOSPITAL AUTHORITY;** | ) ) | **DEMAND FOR JURY TRIAL** |
| **THE UNIVERSITY OF KANSAS HEALTH SYSTEM;** | ) ) | |
| **THE UNIVERSITY OF KANSAS MEDICAL CENTER;** | ) ) | |
| **THE UNIVERSITY OF KANSAS POLICE DEPARTMENT;** | ) ) | |
| | ) | |
| **STEVE STITES, M.D.,** in his individual and official capacities; | ) ) | |
| **AREVALO BRIAN GUTIERREZ,** in his individual and official capacities; | ) ) | |
| **ZACHARY DYLAN CRONK,** in his individual and official capacities; | ) ) | |
| **JESSICA WHITE,** in her individual and official capacities; | ) ) | |
| **JEFFREY A. COWDREY,** in his individual and official capacities; | ) ) | |
| **WILLIAM J. MAHONEY,** in his individual and official capacities; | ) ) | |
| | ) | |
| **CIERRA DE'AOUN FRANCE,** in her individual and official capacities; | ) ) | |
| **SARAH ZIMMERMAN,** in her individual and official capacities; | ) ) | |
| **SAMUEL BRODDLE,** in his individual and official capacities; | ) ) | |
| **JOHN DOE** (identity currently unknown), in his individual and official capacities; | ) ) ) | |

**Defendants.**

## **INTRODUCTION**

This complaint submitted to the court is a civil rights, disability discrimination, and emergency care action arising from Defendants' mishandling of Plaintiff during a postoperative emergency on May 7, 2023, and their subsequent retaliation and obstruction of access to records. Plaintiff underwent major colorectal and urogynecology surgery in April 2023. Eleven days later, while seeking emergency treatment at the University of Kansas Emergency Department, Plaintiff was denied stabilizing medical care and physically mishandled, causing injury and loss of consciousness that was untreated and undocumented.

Defendants initiated criminal charges against Plaintiff for Indecent Exposure and Trespassing based on allegations that can be contradicted by numerous witnesses and ample available video evidence. Defendants discouraged Plaintiff from contesting the charges, threatened harm to her career and reputation, and-despite the absence of supporting evidence, refused to withdraw the criminal charges. Plaintiff was forced to spend a significant amount of time, money and travel to fight the charges within the legal system during a time when patient was still under doctor ordered restrictions.

Plaintiff brings this action under the Americans with Disabilities Act, the Rehabilitation Act, the Kansas Act Against Discrimination, EMT ALA, and 42 U.S.C. § 1983 against the University of Kansas Hospital Authority, the University of Kansas Health System, the University of Kansas Medical Center, the University of Kansas Police Department, and their employees and agents (collectively, "Defendants"). Plaintiff seeks compensatory and punitive damages, declaratory and injunctive relief, and all other remedies available at law and equity.

## COMPLAINT

COMES NOW Plaintiff, Jane Doe, appearing pro se, and for her causes of action against the University of Kansas Hospital Authority, the University of Kansas Health System, the University of Kansas Medical Center, the University of Kansas Police Department, and the individual defendants named herein, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff Jane Doe is an individual residing in Travis County, Texas.

2. The University of Kansas Hospital Authority ("KUHA") is a body politic and corporate entity created under K.S.A. 76-3301 et seq., functioning as an independent instrumentality of the State of Kansas. KUHA operates the University of Kansas Hospital and related facilities in Kansas City, Kansas.

3. The University of Kansas Health System ("KUHS") is the operating name of KUHA's network of hospitals and clinics providing healthcare services throughout Kansas.

4. The University of Kansas Medical Center ("KUMC") is a state educational institution governed by the Kansas Board of Regents pursuant to K.S.A. 76-327. KUMC conducts educational, research, clinical, and law-enforcement operations and employs university police officers under K.S.A. 76-726.

5. Defendant Steve Stites, M.D., Executive Vice President, Clinical Affairs/ Chief Medical

      Officer of KUMC, is sued in his official capacity. He exercises executive authority over KUMC's clinical operations and coordination with the University of Kansas Police Department.

6. The University of Kansas Police Department ("KUPD") operates under KUMC and the University of Kansas and conducts law-enforcement activities on KUHA-operated property pursuant to K.S.A. 76-726.

7. The Officer Defendants-Arevalo Brian Gutierrez, Zachary Dylan Cronk, Jessica White, William J. Mahoney and Jeffrey A. Cowdrey were sworn University Police Officers employed by KUMC at all relevant times, acting under color of state law and within the scope of their employment.

8. The ER Nursing Defendants-Cierra De'aoun France, Sarah Zimmerman, Samuel Broddie, and John Doe were nurses or nurse assistants employed in the KUHA/KUHS emergency department in Kansas City, Kansas. Each participated directly in the events described herein and acted under color of state law and within the scope of employment.

9. Defendant John Doe is designated by a fictitious name because his identity is presently unknown. Plaintiff will amend this complaint when his name is ascertained.

10. All individual defendants acted under color of state law and within the course and scope of employment with entities created, controlled, or operated by the State of Kansas.

11. This action arises under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), the Rehabilitation Act (29 U.S.C. § 794), the Kansas Act Against Discrimination (K.S.A. 44-1001 et seq.), EMTALA (42 U.S.C. § 1395dd), and 42 U.S.C. § 1983.

12. Federal-question jurisdiction exists under 28 U.S.C. § 1331.

13. Supplemental jurisdiction over related state-law claims exists under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

14. Venue is proper under 28 U.S.C. § 1391(b) because Defendants reside or work in this District and the events giving rise to the claims occurred here.

15. Plaintiff designates *Kansas City, Kansas* as the place of trial.

## STATEMENT OF FACTS

### A. BACKGROUND

16. On August 31, 2012, plaintiff was established as a patient with the University of Kansas Health System (KUHS).

17. Between April 17, 2019 and May 7, 2023, Plaintiff received treatment from multiple departments within the KU Health System. During this period, Plaintiff transitioned all of her medical care to KU and became a patient of numerous departments and clinical disciplines.

18. After imaging and diagnostic testing revealed advanced intussusception, prolapse, cystocele with rectocele, and displacement of internal organs due to the advanced stage of the disease, Plaintiff underwent major surgery at KUMC on April 26, 2023. The procedure was performed jointly by Dr. John Ashcraft (Colorectal Oncology) and Dr. Melissa Huggins (Urogynecology).

**B. EMERGENCY DEPARTMENT VISIT**

19. On May 7, 2023, Plaintiff developed severe postoperative complications and was transported by ambulance to KUMC Emergency Department (KUMC-ED).

20. Before transport, paramedics placed a large sleep shirt on Plaintiff, but she remained otherwise unclothed.

21. Plaintiff arrived by ambulance at KU Hospital around 11:45 p.m.

22. Upon Plaintiff's arrival, Nurse France told the paramedics, "She's a regular. Dump her."

24. At the direction of Nurse France, Plaintiff was dropped onto the floor of the emergency department waiting area, causing additional injury and exposing Plaintiff's exposed body to the general public in the waiting room area.

25. After Plaintiff landed on the floor, Defendants France and Broddle repeatedly instructed her to stand up, without assistance, and sit in a hard-surfaced wheelchair.

26. Plaintiff repeatedly stated she recently underwent major surgery at KUMC, was experiencing complications including rectal impaction, had not sat fully upright since surgery due to pain, and required assisted ambulation.

27. Body-worn camera footage shows Officer Cronk and Nurse Broddle assisting Plaintiff in standing from the floor and transferring to a recliner requested by police officers. Plaintiff's body remained exposed until police suggested to staff that coverage be provided.

28. ED staff and KUMC-PD moved Plaintiff to the front hallway near the restroom and the KUMC Security/Police rooms.

29. Staff assisted Plaintiff in standing from the recliner and put pants on her in view of other patients, visitors, and staff who were not involved in Plaintiff's care.

30. An unidentified ED staff member ("John Doe") struck Plaintiff in the abdomen in the area of her recent surgery, causing her to lose consciousness.

31. When Plaintiff regained consciousness, she was back in the ED waiting room on the recliner, covered with blankets and experiencing severe pain.

32. Body cam video shows Plaintiff disoriented, confused and requesting aid.

### C. RETALIATION CONDUCT

39. Plaintiff requested assistance to the restroom but was repeatedly denied; staff insisted she ambulate without a walking aid or support, contrary to doctor's orders and causing further pain and injury.

40. ED staff falsely reported to KUMC-PD that Plaintiff was walking around without pants on and exposing herself to other patients. This information was also used to falsify Plaintiff's medical records, making it a part of her permanent medical records.

41. Officers initiated criminal action against Plaintiff, despite there being no evidence of a crime.

42. Plaintiff was subjected to custodial control by KUMC-PD officers without reasonable suspicion, corroborated evidence, medical assessment, or probable cause. Officers relied solely on France's uncorroborated statements while ignoring exculpatory video and staff comments.

43. Because KUMC would not render medical aid, Plaintiff was forced to perform multiple painful digital disimpactions in the restroom of the ED to relieve postoperative bowel obstruction—an intervention that required medical assessment and treatment. Plaintiff's requests for help during these episodes were ignored or denied, and her repeated

reminders that she could not squat, bend, or strain under her surgeon's orders were repeatedly disregarded. These episodes caused further pain and injury that could have been prevented.

44. Plaintiff can be seen medically compromised and unable to arrange her own transportation upon her request to leave.

45. Officers cited Plaintiff for criminal tresspass and indecent exposure before using a "cab voucher" to arrange for Plaintiff's ride back to her AirBnB residence after discussing the possibilities of taking Plaintiff to jail or "egging" her residence.

46. On May 8, 2023, around 10:30 a.m., Plaintiff failed to appear for a virtual session with Dr. Kragenbrink, a KUMC pain psychologist whom Plaintiff saw weekly. This caused alarm for medical staff since this was not usual behavior for the Plaintiff.

47. Medical records show that medical staff from the spine and pain clinic called 911 and requested that a second EMS unit be dispatched to Plaintiff's Airbnb for a welfare check. Plaintiff was subsequently transported to St. Luke's Hospital (SLH) less than 12 hours after KUMC-PD sent her home.

48. SLH staff contacted KUMC regarding Plaintiff's prior ED visit. KUMC staff told SLH that Plaintiff was a liar and provided false information about her condition. SLH used this false information to inform Plaintiff's plan of care.

49. SLH treated Plaintiff, documented her visible injuries and released her in stable condition.

**D. AFTERMATH AND DEFENDANT'S RESPONSE**

57. Following this incident, Plaintiff contacted KUMC and was directed to Patient Experience Specialist Suzanne Lane-Tanner. Plaintiff was told she could view video footage allegedly showing her behavior. She was then directed to Captain William Mahoney who agreed to conduct an investigation.

58. Mahoney informed Plaintiff that he did not see Plaintiff exposing herself or "walking around without pants on" in the video, but refused to drop the charges due to a "*no tolerance policy*" and because he "*wasn't there*." He also refused to allow Plaintiff to view any video of the incident, despite earlier assurances. Captain Mahoney told Plaintiff that it was their policy to not drop charges initiated by employees.

59. Both Mahoney and Lane-Tanner told Plaintiff that she would be required to appear in court before for the charges would be dismissed, stating, "*Just show up to court, explain what happened, and the charges will be dismissed*."

60. Lane-Tanner threatened Plaintiff's livelihood, telling her, "*This could end your teaching career*," and stating that the allegation could place Plaintiff on the sex-offender registry for life.

61. On May 23, 2023, Lane-Tanner wrote a letter apologizing for the conduct of ED staff but denied all requests for a thorough, including the ample video available. All avenues available to Plaintiff to request all records from this event have been denied.

62. On May 30, 2023, Plaintiff submitted a medical record correction request challenging the note stating she was "walking around the waiting room without pants on," asking KUMC to verify the statement using video. Staff ignored this request, also, and refused to process this request for two and a half years and only at Plaintiff's repeated demands.

9

63. On June 12, 2023, Plaintiff replied to Lane-Tanner's letter, expressing frustration over conflicting information and refusal to review evidence. Lane-Tanner responded only to direct Plaintiff to Medical Records; she did not communicate further.

64. Plaintiff attempted repeatedly to contact Mahoney; her calls were refused or unreturned.

65. Plaintiff later discovered multiple medical notes describing behaviors she had no memory of. Nurse Zimmerman documented "Pt continues to slide off the recliner and lie face first on floor," and recorded triage information Plaintiff does not recall receiving. Triage notes include conflicting data, including blood pressure 126/104, indicating medical distress that was not addressed. Records also indicate an ECG Plaintiff does not recall.

66. Plaintiff attempted to engage KUHA's supervisory staff in conversation, but attempts were ignored or rejected. Plaintiff attempted to engage legal department and was told no such department existed. During a later follow-up, a KUMC physician gave Plaintiff the number for the Risk and Claims Department. When Plaintiff called, staff said, "I'm sorry. I can't speak to you," and disconnected.

### E. RESULTING HARM

77. Plaintiff was injured during this event. Plaintiff experienced an undocumented medical episode, likely due to the actions of KUHA employees. Plaintiff spent money, time, and a disruption to the healing process following a major surgery.

78. Plaintiff continues to suffer physical pain, psychological trauma, humiliation, and symptoms of post-traumatic stress disorder (PTSD) as a direct result of Defendants' conduct. She also experiences worsened postoperative complications, distrust of medical providers, long-term emotional and physical harm, and damage to her reputation.

### F. TOLLING OF LIMITATIONS

78. The KUMC-ED visit occurred on May 7-8, 2023. The criminal case for Indecent Exposure was disposed in August, 2023. Plaintiff's falsified medical records of this incident have been forwarded to numerous other healthcare professionals who have used that information to inform healthcare decisions. Plaintiff's official medical records remain uncorrected and prejudicial, also adding to the weight of this case.

79. Plaintiff's claims are timely under the doctrines of equitable tolling, delayed discovery, and fraudulent concealment. The statute of limitations should be tolled based on Defendants' conduct and Plaintiff's medical and life circumstances that made timely filing impossible.

80. Defendants withheld, refused access to, and misrepresented the contents of video evidence showing the events at issue. Plaintiff made repeated requests to view the video footage, including through KUMC-PD, KUHS Patient Relations, KUHS Privacy Services, KUHA Risk and Claims, and the KUMC HIPAA Compliance Officer, but Defendants repeatedly blocked her from reviewing it and refused to review it internally. Defendants' refusal to release critical evidence prevented Plaintiff from discovering the full extent of the wrongdoing and from timely preparing her claims.

81. Defendants also provided contradictory information, assured Plaintiff that charges would be dismissed if she simply "showed up to court," while simultaneously recommending jail time to prosecutors. Defendants repeatedly redirected Plaintiff between departments while refusing to answer questions or return communications. These actions misled

Plaintiff, obstructed her ability to understand her legal position, and delayed discovery of key facts.

82. Several KUMC staff, departments, and police personnel intentionally misrepresented Plaintiff's conduct, communicated false statements to outside providers, and documented triage and medical actions that Plaintiff does not recall and that video evidence may contradict. Defendants' active concealment, misinformation, and refusal to verify their own records through available video constitute fraudulent concealment sufficient to toll any limitations period.

83. In addition to Defendants' obstructive conduct, Plaintiff's ability to file suit was severely impaired by extraordinary medical and life circumstances arising partly from the events of May 7–8, 2023. These include:

    a. loss of housing resulting in homelessness;

    b. loss of income and financial instability that caused inability to obtain basic needs, including food;

    c. loss of access to consistent medical care;

    d. deterioration of mental health, including chronic PTSD, severe psychological trauma, and episodes of suicidality;

    e. multiple surgeries; development of severe sepsis requiring life-saving surgical intervention; extended hospital stays; months of home nursing visits and

    f. permanent disability

84. Plaintiff acted diligently whenever she was physically and mentally able, repeatedly contacting KUHS, KUMC-PD, Patient Relations, Privacy Services, and Risk and Claims to obtain records, correct false entries, and request access to the withheld video evidence.

Despite her diligence, Defendants' refusal to provide access to material facts and Plaintiff's intervening life-threatening medical crises made timely filing impossible.

85. Due to above circumstances, Plaintiff could not reasonably have filed suit earlier, and the limitations period do not begin to run until Plaintiffs are able to obtain sufficient information to recognize the full scope of injury and the misconduct supporting claims, which, to date, Plaintiff is still being denied.

## CAUSES OF ACTION

**Count I - Violation of the Americans with Disabilities Act (42 U.S.C. § 12132)**

86. Plaintiff incorporates all prior paragraphs.

87. KUHA, KUHS, and KUMC are public entities subject to Title II of the ADA.

88. Plaintiff has disabilities and had significant postoperative physical limitations, documented fall-risk conditions, and a mental-health history known to KUMC providers.

89. Defendants denied Plaintiff reasonable accommodations, including assistance with mobility, safe restroom access, stabilizing treatment, and appropriate triage.

90. Defendants discriminated against Plaintiff based on disability and/or perceived disability.

91. Wherefore, Defendants are liable for violating Title II of the ADA.

**Count II - Violation of the Rehabilitation Act (29 U.S.C. § 794)**

92. KUHA, KUHS, and KUMC receive federal financial assistance and are subject to Section

504 of the Rehabilitation Act.

93. Plaintiff was denied equal access, emergency care, and mobility assistance required for her disabilities.

94. Defendants denied Plaintiff reasonable accommodations, including assistance with mobility, safe restroom access, stabilizing treatment, and appropriate triage.

95. Defendants discriminated against Plaintiff based on disability and/or perceived disability.

96. Wherefore, Defendants are liable for violating Title II of the ADA.

**Count II - Violation of the Rehabilitation Act (29 U.S.C. § 794)**

97. KUHA, KUHS, and KUMC receive federal financial assistance and are subject to Section

    504 of the Rehabilitation Act.

98. Plaintiff was denied equal access, emergency care, and mobility assistance required for her disabilities.

99. Defendants' conduct-including refusal of care and disability-based assumptions constitutes disparate treatment.

100. Wherefore, Defendants are liable for violating Section 504 of the Rehabilitation Act.

**Count IV - EMTALA Violations (42 U.S.C. § 1395dd)**

101. Plaintiff arrived at KUMC-ED seeking emergency care and was entitled to an appropriate medical screening and stabilizing treatment.

102. Defendants failed to conduct legitimate screening, fabricated triage entries, ignored signs of medical distress-including blood pressure of 126/104-and released Plaintiff without stabilization.

103. Wherefore, Defendants are liable for violating EMTALA.

**Count V - Conspiracy and Obstruction (42 U.S.C. § 1983; federal law)**

104. After the incident, Plaintiff submitted records requests through KUMC's designated process, as instructed by its employees, under KORA and HIPAA. KUHA and KUPD delayed, restricted, or produced incomplete records.

105. KUHA personnel, including the Patient Advocate, discouraged Plaintiff from challenging the false allegations and attempted to deter her from asserting her rights.

106. Upon information and belief, KUHA and KUPD coordinated communications with the prosecutor, including recommendations for jail time, which was inconsistent with available evidence.

107. These actions constitute a coordinated effort to conceal material evidence and obstruct Plaintiffs ability to pursue claims under federal law.

108. Wherefore, Defendants are liable for conspiracy and obstruction of access to records.

**Count VI - Falsification of Medical Records (K.S.A. 21-5824; K.A.R. 100-24-1; 18 U.S.C. § 1519)**

109. KUHA and KUHS staff, acting jointly with KUPD, created or inserted false statements into Plaintiffs medical record, including fabricated descriptions used to justify withholding care and involving police.

110. Such conduct violates K.S.A. 21-5824, which prohibits making false written instruments with intent to defraud or mislead. These acts constitute unprofessional conduct under K.A.R. 100-24-1, which forbids falsifying, altering, or destroying medical records.

111. Defendants further violated 18 U.S.C. § 1519 by falsifying records with intent to influence or impede matters within federal jurisdiction, including ADA, Rehabilitation Act, EMTALA, and §1983 proceedings.

112. Wherefore, Defendants are liable for falsification of medical records. Such conduct violates Kansas criminal law, Kansas medical-licensure regulations, and federal obstruction statutes.

**Count VII - § 1983 - Retaliation, Due Process Violations, and Conspiracy** 113.

The individual defendants acted under color of state law.

114. Defendants deprived Plaintiff of federally protected rights by fabricating allegations, issuing false citations, obstructing record access, and coordinating with prosecutors to reinforce unfounded charges.

115. Wherefore, Defendants are liable for acting jointly and in concert, constituting a civil conspiracy.

**Count VIII - Continuing Harm and Deliberate Indifference**

116. Defendants exhibited deliberate indifference to Plaintiffs health and safety.

117. Defendants' actions and omissions constitute deliberate indifference under the Fourteenth Amendment and ongoing violations causing continuing harm.

118. Plaintiff continues to suffer physical injury, emotional trauma, PTSD, and long-term medical complications.

119. Wherefore, Plaintiff seeks declaratory and injunctive relief to prevent further harm, as well as compensatory damages for the harm already sustained.

## DAMAGES

120. Plaintiff incorporates all preceding paragraphs as if fully stated herein.

121. Defendants herein discriminated against Plaintiff on the basis of her disabilities or assumed disabilites with malice and reckless indifference as to the legally protected rights of the Plaintiff.

122. As a direct and proximate result of Defendants' actions, Plaintiff has suffered professional harm, reputational harm, monetary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, among other non-monetary damages.

123. While contesting the Indecent Exposure charge, Plaintiff was required to travel repeatedly between Kansas City, Kansas and her state of residence throughout a multimonth surgical recovery period. Her surgeon advised limiting travel and restricting other activities, yet these trips were necessary, causing significant physical pain and financial loss.

124. Plaintiff continues to experience anxiety, depression, and post-traumatic stress symptoms requiring ongoing care.

125. Defendants' conduct has undermined Plaintiffs access to medical treatment, damaged her reputation, and eroded trust in healthcare institutions.

126. Defendants' actions were willful, wanton, malicious, and reckless, entitling Plaintiff to compensatory and punitive damages, as well as declaratory relief establishing the illegality of Defendants' conduct, injunctive relief preventing further violations of Plaintiff's rights, and any additional relief the Court deems just and proper.

WHEREFORE, Plaintiff prays the Court enter judgment in her favor against Defendant on all Counts of her Complaint.

Respectfully Submitted,

/s/ *Karen Overstreet*

Karen Overstreet, Pro Se Plaintiff
Email: dltbgyd.ku.lawsuit@gmail.com
Ph: (512) 649-8723
3575 Far West Blvd.
P.O. Box 26362
Austin, TX 78755